IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JAMES JOHNSON,
            Plaintiff,

        vs.                                                    No. 19-2676-JTM

ANDREW SAUL, Commissioner
        of Social Security
                    Defendant.

MEMORANDUM AND ORDER

Plaintiff James Johnson applied for social security benefits in 1990, when he was

33 years old, and obtained a favorable decision in May 1991. In 2013, however, the

agency obtained information suggesting that Johnson had submitted inaccurate

information in his application, and reopened the matter, ultimately determining that

Johnson was not disabled in 1991. On the key issue of whether fraud or "similar fault"

occurred in the context of the original award, this court affirmed the decision of the

Appeals Council:

> The court will not reweigh the evidence. The only issue is whether
> a reasonable factfinder could conclude that a preponderance of the
> evidence demonstrated that plaintiff knowingly underperformed on the
> IQ testing in 1991. Significantly, Dr. Blum stated that he was aware of "no"
> condition possessed by the plaintiff that would explain the lower scores in
> 1991, and that would explain why those scores improved when tested in
> 2012. His conclusion is that plaintiff was functioning above that range in
> 1991. Dr. Blum's findings were based on his evaluation of the entire

record, including the 2012 investigation report, the 2012 evaluation by Dr.
Neufeld, and other portions of the record from 1987, 1992 and 1996,
which, in his opinion, would not support below normal intellectual
limitations, as set forth above. Dr. Blum also set forth why he disregarded
the opinions of Dr. Day, Dr. FitzGerald, and Dr. Vandenberg. Based on his
review of the evidence, Dr. Blum concluded that plaintiff did not have a
severe mental impairment from 1991 through 2012.

Also relevant is information noted by the ALJ in his opinion. The
ALJ noted the opinions of Dr. Cannon, plaintiff's treating psychiatrist. In
2014, Dr. Cannon indicated that plaintiff's intellect was in the average
range.

After considering the evidence as a whole, there is sufficient
evidence which a reasonable mind might accept as adequate to support a
conclusion that plaintiff's underperformance on the testing in 1991 was a
material factor in finding plaintiff disabled, and that it was knowingly
done. The Appeals Council finding of "similar fault" by the plaintiff is
supported by substantial evidence.

Tr. 619-20 (record citations and footnote omitted).

The court also rejected the argument that the Appeals Council had violated

Social Security Ruling 16-3p, which provides that the Commissioner should not attempt

to go beyond the evidence and attempt to assess a claimant's overall character or

truthfulness. SSR 16-3p had been adopted after the 2015 ALJ decision but before the

2017 decision of the Appeals Council. The court wrote:

[T}here is sufficient evidence from which a reasonable mind might accept
as adequate to support a conclusion that plaintiff's underperformance on
the testing in 1991 was a material factor in finding plaintiff disabled, and
that it was knowingly done. Therefore, the Appeals Council finding of
"similar fault" by the plaintiff is supported by substantial evidence. That
finding, by implication, requires a determination of plaintiff's truthfulness
insofar as his performance on the IQ testing in 1991 and in 2012….

The decision of the Appeals Council in finding that plaintiff engaged in similar fault relied on the medical/psychological reports, as set forth above, particularly giving great weight to the opinions of Dr. Blum, who had examined the entire record. The Appeals Council made its decision in accordance with the statute, regulations, and SSRs regarding similar fault. The balance of the Appeals Council's analysis of plaintiff's statements and behavior as they relate to the question of similar fault and plaintiff's RFC was not based on an examination of plaintiff's overall character or truthfulness, but was an evidence-based analysis of the administrative record … supported by substantial evidence in the record.

Tr. at 622-23.

The court remanded the case for a fuller consideration of Johnson's ability to perform past relevant work. The ALJ subsequently issued relevant findings but also determined that Johnson was barred from receiving benefits by Social Security Ruling 16-1p. The matter has again been appealed to this court, which finds that substantial evidence shows that Johnson was not disabled in 1991 and the court affirms the decision of the Commissioner.

Under the Act, the court takes as conclusive the factual findings of the Commissioner so long as these are "supported by substantial evidence." 42 U.S.C. § 405(g).  The court thus looks to whether those factual findings have such support, and whether the ALJ applied the correct legal standard. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence" means "more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753, *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

3

In making this determination, the court must "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

A claimant is disabled if he or she suffers from "a physical or mental impairment" which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753, *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a). The steps are designed to be followed in order. If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 WL 3001753, at *2.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of

4

severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753, *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 WL 3001753, *2 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

In the present appeal, Johnson challenges the ALJ's application of SSR 16-1p, arguing that the Commissioner was precluded from invoking the ruling on remand. As with SSR 16-3p, which was expressly considered by the court in the course of its 2017 ruling, SSR 16-1p was adopted prior to the Appeals Council's 2016 ruling. Although the court specifically directed on remand consideration of two issues (first, the conflict

between plaintiff's mental limitations and his ability to perform jobs with detailed instructions, and second whether Johnson's 2008 employment would constitute relevant work for purposes of 20 CFR § 1562(b)), nothing in the court's prior Order limited the ability of the Commissioner to review the case under SSR 16-1p. The Commissioner's most recent decision is not inconsistent with prior rulings of the court.

Under 42 U.S.C. § 405(u)(2), the Commissioner must immediately redetermine a claimant's entitlement to benefits if there is reason to believe that he obtained those benefits through fraud or similar fault. 42 U.S.C. § 405(u)(2); Social Security Ruling (SSR) 16-1p, 2016 WL 1029284, at *3. "Similar fault" means incorrect or incomplete statements that are material to the determination or information that is material to the determination that is knowingly concealed.

In his original application, Johnson claimed he was disabled due to back spasms, stomach pain, and a "mind condition." Based on 1991 IQ tests, the agency found Johnson was disabled because of an intellectual disability. The agency reopened the case after a 2012 independent review, and found evidence indicating Johnson might have obtained the low IQ scores in 1991 by artifice. Following a January 2019 hearing, the ALJ concluded that the 1991 award was obtained through similar fault, and that Johnson did not engage in substantial gainful activity during the relevant period. His severe impairments consisted of affective disorder; anxiety disorder; substance abuse disorders (drugs and alcohol); and asthma/history of dyspnea (shortness of breath) (Tr. 562-63). None of the impairments, individually or in combination, met the listed

impairments set forth in the regulations, 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 563-65). Johnson retained the capacity to do medium work with some additional limitations: occasional exposure to pulmonary irritants; understanding, remembering, and carrying out simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions, and with few, if any workplace changes; occasional interaction with the public; and frequent interaction with coworkers and supervisors (Tr. 565-72). The ALJ found that Johnson could return to his past work as a commercial cleaner, and could perform other work in the national economy, such as routing electrical assembler, routing clerk, housekeeper/cleaner, street cleaner, and sweeper cleaner. (Tr. 573-74).

When the court remanded the case in December 2017 under sentence four of § 405(g), it did so after affirming a finding of "similar fault" and remanding with directions for evaluation of steps four and five. The decision terminated the litigation. Johnson could have, but did not, challenge the finding of "similar fault" on appeal. Although claimant now challenges this conclusion, the court agrees with defendant that such arguments are foreclosed by the 2017 memorandum order. *See United States v. Rogers*, 960 F.2d 1501, 1508 (10th Cir. 1992).

A preponderance of the evidence supports the ALJ's determination of "similar fault" in the application. The includes the evaluation rendered by Dr. Thomas Fitzgerald (which this court observed in its earlier order was obtained by similar fault (Tr. 617)) and the 1990 psychological evaluation by Gerald Vandenberg, Ph.D., during

which Johnson was uncooperative and "presented with a variety of affectations that greatly exceed[ed] how he presented at other times." (Tr. 561). Psychologist Jason Neufeld, Ph.D., examined claimant in November 2012, and found his "self-reported information was unreliable," his "level of effort did not appear to remain adequate throughout testing," and the "test results are likely to underestimate his true level of functioning" (Tr. 311). Treating psychiatrist, Dr. Mark Cannon wrote in 2014 that claimant had "no cognitive impairments, insight and judgment good." (Tr. 416). "All memory functions were intact. Abstraction ability fair. Fund of knowledge fair. Vocabulary fair. Intellect as assessed by vocabulary, fund of knowledge, and abstraction ability seems in the average range." (Tr. 419). This medical evidence and more supplies substantial evidence to support the ALJ's determination.

The ALJ found that through Johnson's original allowance date he could perform medium work with occasional exposure to pulmonary irritants; understand, remember, and carry out simple, routine, and repetitive tasks in an environment free of fast-paced production requirements, which involved only simple, work-related decisions, and with few, if any, workplace changes; and occasionally interact with the public and frequently interact with coworkers and supervisors. The court finds no error in this assessment, as the evidence, including a psychiatric systems examination, indicates that the claimant was successfully treated with medication. (Tr. 419, 426, 439, 449).

Although Johnson argues he could not afford medication in 2014, he supplies no evidence that he was unable to afford medication during the relevant period (before

May 1991). Further, Dr. Blum concluded that there was no known condition that Johnson had in 1991 that would have resulted in a finding of disability, but that would have allowed him to improve significantly later in life. Since Johnson has continued to argue that he has had the same limitations into the present, it was reasonable for the ALJ to consider how treatment helped him. The ALJ's conclusions fit well within in the general medical evidence showing that Johnson may have some minor mental limitations, but these would not have prevented him from working in 1991.

The plaintiff claims that the ALJ was empowered to only address the specific issues cited in the order of remand. But the court finds that the ALJ did not act improperly in reaching the issue of similar fault, or in resolving other issues of fact. Upon remand for a new hearing, an ALJ must consider all pertinent issues *de novo*. HALLEX § I-2-8-18, 1993 WL 643058. Under 20 CFR § 404.983, any "issues relating to [a] claim may be considered by the [ALJ] whether or not they were raised in the administrative proceedings leading to the final decision." 20 C.F.R. § 404.983. The challenged rulings were in each case pertinent to issues in the case. The court in 2017 did not directly resolve the issue of Johnson's residual functional capacity as adopted in the 2015 ruling, and the ALJ at the 2019 hearing could appropriately provide fuller and further rulings on that issue.

Responding the court's directive, the ALJ did address the issue of whether Johnson's 2008 employment as a home health aide lasted long enough for him to learn the job and whether it helped his current work capability. The ALJ found that Johnson

9

could return to his past relevant work as a commercial cleaner. This conclusion reflects the testimony of the vocation expert indicating that Johnson had two positions, prior to 1991, for at least one month: housekeeping cleaner and commercial cleaner. These were heavy exertional level jobs, according to the expert, performed at the light exertional level in practice. (Tr. 899). The expert thus concluded that a person of claimant's age and abilities could return to past work as a commercial cleaner as he actually performed it, at the light exertional level (Tr. 910). The decision is supported by substantial evidence and was appropriately rendered on remand, as the court did not limit the Commissioner as to what past work to consider.

The court finds no error in the ALJ's application of SSR 16-1p (which became effective on March 14, 2016) and HALLEX I-1-3-25 (updated in February, 2016). In resolving the present claim in 2019, the ALJ appropriately considered these authorities, which are applicable to all decisions after those effective dates. As already noted, this court implicitly recognized this principle when it applied SSR 16-3p in its 2017 memorandum and order. By its express terms, SSR 16-1p provides that the ALJ should resolve the claim based on the original relevant time period, not the entire time period between the application date and when the ultimate administrative decision. See SSR 16-1p, 2016 WL 1029284, at *3 ("If an individual disagrees with our finding that the evidence does not support his or her entitlement or eligibility *at the time of the original allowance*, that individual may appeal our determination or decision." (emphasis

added)). The relevant issue at each step in the sequential process, therefore, was the claimant's capacity in 1991.

Finally, the court finds no error in the ALJ's determination that Johnson's functional capacity would allow him to return to his former work of cleaner as actually performed, or alternatively, to other work in the national economy including housekeeper/cleaner, street cleaner (household), and sweeper cleaner. In its 2017 memorandum and order, the court noted a potential tension (arising in the 2015 ALJ decision) between the restriction to simple instructions and step five employment at a GED level two position. The 2019 ALJ decision presents no such conflict. The claimant's previous relevant work as a cleaner has a GED level of one. Further, while it is classified as a heavy exertional by the DOT, the ALJ may address relevant work as it was "actually performed." 20 CFR § 404.1560(b)(2). Here, the ALJ questioned the vocational expert as to the actual demands of the claimant's cleaning work, and determined in practice it was only light exertional. (Tr. 871, 873, 899). Similar vocational expert testimony supports the conclusion that the claimant could perform other work in the national economy. (Tr. 902-03, 911).

The court finds that the ALJ's order is consistent with the prior Order of the court and is supported by substantial evidence.

IT IS ACCORDINGLY ORDERED this day of March, 2021, that the decision of the Commissioner is AFFIRMED.


<u>J. Thomas Marten</u>
J. Thomas Marten, Judge

12